IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ERIC E. ATKISSON                                                          PLAINTIFF


          v.                          Civil No.  14-5126


ROBERT HOLLY; SHERIFF KELLEY CRADDUCK;
LIEUTENANT STEVEN
DARNER; and JEREMY GUYLL                                    DEFENDANTS


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

          This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  The

Plaintiff, Eric Atkisson, proceeds *pro se* and *in forma pauperis*.  He names as defendants Robert

Holly, Sheriff Kelley Cradduck, Lieutenant Steven Darner, and Jeremy Guyll, in both their

official and personal capacities.

          Atkisson is incarcerated in the Wrightsville Unit of the Arkansas Department of

Correction.  Atkisson's claims in this action concern his confinement at the Benton County

Detention Center (BCDC).  Atkisson asserts that: (1)  the Defendants violated his civil rights by

requiring him to buy indigent hygiene items from the Keefe Commissary that should be provided

free of charge; (2) the Defendants violated his right to access to the courts by holding mail for

more than 24 hours; (3) the Defendants violated his right to access to the courts by limiting

access to legal paper, envelopes, and postage because he was an indigent; (4) the Defendants

violated his right to access to the courts because Lt. Darner was slow to provide legal paper and

envelopes to send such items; and (5) the Defendants violated his First Amendment rights

-1-

because he had to choose two (2) personal items of mail per week or four (4) privileged (legal) items of mail per week and because he only received four (4) envelopes and eight (8) pieces of paper per week.

A hearing was held on August 25, 2015, to allow Atkisson to respond to the Defendants' Motion for Summary Judgment (Doc. 25). The Motion is now ready for decision.[1]

**Background**

Eric Atkisson was taken into custody by the BCDC on September 11, 2013, on charges of Failure to Appear and Parole Revocation. Defendants' Exhibit (hereinafter Defts' Ex.) 1.[2] Atkisson pled guilty to the charges against him and, on March 13, 2014, was sentenced to 32 years in jail, with an additional 15 years suspended. Atkisson was released from the BCDC to the Arkansas Department of Corrections on June 16, 2014. Id.

While in the BCDC, Atkisson was supplied an indigent kit each week. An indigent kit consists of:

> eight (8) pieces of paper,
> four (4) envelopes,
> a small pencil,
> a small bar of soap,
> a small bottle of shampoo,
> a tooth brush, and
> a small tube of toothpaste.

Defts' Ex. 1; Defts' Ex. 10; Defts' Ex 2. Atkisson testified that he ran out of hygiene supplies each week, particularly soap, shampoo and toothpaste. Defts' Ex. 12. Atkisson's toothpaste and

---

[1] During the hearing, Atkisson informed the Court that he would like to include as an exhibit for the Court's consideration an affidavit from his wife concerning the mail she received from him. The Court gave Atkisson ten (10) days to provide the affidavit to the Court and to opposing counsel. However, the Court has not received the affidavit from Atkisson.

[2] "Defendants' Exhibits" are exhibits to the Statement of Indisputable Material Facts in Support of Defendants' Motion for Summary Judgment (Doc. 28) and are being referenced by their CMECF attachment number.

AO72A
(Rev. 8/82)

soap would last about four days out of the week. <u>Defts' Ex.</u> 12. Atkisson testified that he was provided a fresh supply of the indigent kit each week, and that his prison account was charged for the indigent kit. <u>Defts' Ex.</u> 12. Atkisson was provided the indigent kit whether or not he had money in his prison account. Atkisson testified that he got skin rashes due to his lack of soap. Atkisson testified that he started having toothaches; and, when he eventually saw a dentist at the Arkansas Department of Corrections (ADC), he was told that he had cavities that needed to be extracted. <u>Defts' Ex.</u> 12. Other than mentioning the quantity of the items in the hygiene kit verbally and alleging price gouging in a grievance, Atkisson did not complain about the hygiene supplies in a formal grievance. <u>Defts' Ex.</u> 2-7, 12.

BCDC policy provides that if an inmate needs additional paper or envelopes, they are available for purchase through the commissary. BCDC will provide as many legal envelopes and paper as are needed by indigent inmates. <u>Defts' Ex.</u> 1 and 11. Inmates are given two postage paid envelopes per week at no charge for mailing family members. <u>Defts' Ex.</u> 1. Testimony was given that following a change in policy in April of 2014, inmates were provided four postage paid envelopes per week at no charge for mailing family members. <u>Defts' Ex.</u> 11.

It is the policy of the BCDC to process mail within 24 hours of receipt. Mail is picked up by, or delivered to, the United States Postal Service on regular business days. <u>Defts' Ex.</u> 1. The Affidavit of Lt. Steven Darner stated that he enforced the BCDC policy regarding mail handling and indigent inmate mail allowances during Atkisson's incarceration at the BCDC. <u>Defts' Ex.</u> 2.

Atkisson asserts that he had at least three (3) letters delayed by ten (10) days or more; and, that he believes his mail was, on one occasion, delayed twenty (20) days. Atkisson sent out

-3-

92 letters in the mail over the thirty-nine (39) weeks and five (5) days that he was housed in the Benton County Jail; of the letters sent, fifty-eight (58) were to his wife, Felicia Atkisson, at an address in Bentonville, Arkansas and at the BCDC.  Defts' Ex. 9.  Atkisson received seventy-five (75) pieces of mail during his incarceration at the BCDC.  Defts' Ex. 9.  Atkisson testified that he was allowed telephone calls and visitors and that his wife was allowed to visit him at the BCDC when she was not in jail.

Although Atkisson testified that he missed a court deadline to file objections to affirmative defenses because his mail was late, Atkisson admitted that he was not penalized by the missed deadline.  Defts' Ex. 12.  Atkisson also asserts that Lt. Steven Darner lied on two separate forms concerning Atkisson's inmate account and his request for *in forma pauperis* status.  Defts' Ex. 12.  Atkisson was granted *in forma pauperis* status despite the incorrect statement of account.

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

-4-

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Bachler, 762 F.2d 621, 625 (8th Cir. 1985)).

## 3.  Discussion

Initially the Court notes that Atkisson asserts no allegations that Sheriff Cradduck and Robert Holly were personally involved in the issues he sets forth. Although Atkisson states that he believes Sheriff Cradduck and Holly were involved in adopting policy that affected his allegations, neither Defendant personally responded to any grievance filed by Atkisson; and, there is no allegation that either Sheriff Cradduck or Holly knew about Atkisson's mail or hygiene issues.

Because a constitutional claim cannot be based upon *respondeat superior*, neither Sheriff Cradduck nor Holly can be held personally liable for Atkisson's claims. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

### Access to the Courts

Atkisson argues that he was denied access to the Courts due to mail and supply limitations.  He states that he was able to send and receive mail, but that it was on a limited basis. Atkisson claims that he was denied access to legal paper, envelopes and postage because he was indigent; and, that he was limited on the amount of legal mail he could send out. Atkisson asserts that he received three (3) letters (1 outgoing, 2 incoming) that were held ten (10)

-5-

days or more; and, that he believes his mail was on one occasion delayed twenty (20) days. Finally, Atkisson claims that his financial form for an *in forma pauperis* request was delayed and incorrect.

While it is clear that an inmate has a constitutional right to meaningful access to the courts, "[t]o assert a successful claim for denial of meaningful access to the courts . . . . an inmate must demonstrate that he suffered prejudice." Berdella v. Delo, 972 F.2d 204, 209-210 (8th Cir. 1992). The proof set forth by the BCDC shows that policy provided unlimited access to legal supplies and mailings; and, that Atkisson did, in fact, send up to seven (7) pieces of legal mail on one date. Defts' Ex. 9. Further, there is absolutely no proof that Atkisson was harmed in any way by any denial of access. For those reasons, Atkisson's claim concerning access to the courts should be dismissed.

### First Amendment Rights

Atkisson also argues that his First Amendment rights were violated because he had to choose between two (2) personal items of mail per week or four (4) privileged (legal) items of mail per week and because he only received four (4) envelopes and eight (8) pieces of paper per week. He also contends that delays in the mail system violated his rights.

The proof shows that although pre-paid envelopes were limited, Atkisson had the right to purchase additional postage when able. In addition, Atkisson had the right to make telephone calls and receive visitors.

When reviewing prison policies that affect a prisoner's First Amendment rights, it is necessary to determine whether or not the policy furthers "an important or substantial governmental interest unrelated to suppression of expression." Procunier v. Martinez, 416 U.S.

-6-

396, 413 (1974). It has been established that legal mail was not limited by the BCDC; and, I find that the BCDC had a clear economical interest in limiting free, pre-paid postage for personal mailings. Further, it has been established that "indigent inmates have no constitutional right to free postage for nonlegal mail." Hershberger v. Scaletta, 33 F.3d 955, 957 (8th Cir. 1994). See also Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir. 1984). For those reasons, Atkisson's First Amendment claims should be dismissed.

**Indigent Kit**

Finally, Atkisson argues that his constitutional rights were violated because he ran out of hygiene supplies each month. Atkisson was supplied weekly with an "indigent kit," which included hygiene supplies such as soap, shampoo, toothpaste, and a toothbrush. Each inmate was charged weekly for the items whether he was indigent or not. Atkisson never had money in his commissary account and no money was collected or held from him for the balance in the account.

Although Atkisson testified that he verbally requested additional supplies, Atkisson never filed a formal grievance concerning his lack of hygiene supplies. According to 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Further, "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001)(citing Booth v. Churner, 532 U.S. 731, 738-39 (2001)). Because Atkisson's administrative remedies were not exhausted, this claim is subject to dismissal.

Notwithstanding Atkisson's failure to exhaust his administrative remedies, I further find that Atkisson's claim does not constitute cruel and unusual punishment.  The Eighth Amendment prohibits punishments that "deprive inmates of the minimal civilized measure of life's necessities; accordingly, inmates are entitled to "reasonably adequate" personal hygiene supplies. Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).  Here, Atkisson was supplied with an "indigent kit" weekly.  Although Atkisson testified that he ran out of shampoo, toothpaste, and soap each week 2-3 days before a new kit was supplied, I find that the hygiene supply was "reasonably adequate."

**Qualified Immunity**

Further, I find that the defendants are clearly entitled to qualified immunity as a matter of law on Atkisson's claims against them in their individual capacity.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, ____ (2011).  Atkisson's allegations fail to set forth a clear constitutional violation as a matter of law.

**Official Capacity Claims**

Finally, I find that Atkisson's official capacity claims are tantamount to suing Benton County.  "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Grayson v. Ross, 454 F.3d 802, 810-11 (8th Cir. 2006)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

-8-

There are no facts to support an allegation of an unconstitutional policy or custom; therefore, Atkisson's official capacity claims should be dismissed.

**Conclusion**

For the reasons above, I recommend that Defendants' Motion for Summary Judgment (Doc. 25) be **GRANTED** and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of October, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-9-